UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------
                                                             :

UNITED STATES OF AMERICA,        :        CASE NO. 4:04-CR-00011

                                              :
            Plaintiff,                         :
                                              :
vs.                                               :        SENTENCING MEMORANDUM
                                              :
DANIEL EDWARD VIGORITO, JR.    :
                                              :
            Defendant.                     :
                                              :
--------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this sentencing memorandum, the Court provides a "thorough explanation" of its imposition of a non-guideline sentence in Daniel Vigorito's case. *See United States v. Liou*, 491 F.3d 334, 339, n. 4 (6th Cir. 2007) ("[A] thorough explanation is the most reliable way for a district court to make clear its reasons supporting a given sentence."); *see also Rita v. United States*, 127 S.Ct. 2456, 2468 (2007).

## I. Background

On January 6, 2004, the grand jury charged Daniel Edward Vigorito, Jr. ("Vigorito" or "the Defendant") with unlawfully, knowingly, and intentionally possessing with the intent to distribute more than 500 grams of powder cocaine in violation of 21 U.S.C. § 841(a)(1). [Doc. 8.]

On February 23, 2004, after reaching a plea agreement with the United States, the Defendant pled guilty to the charge of possession with the intent to distribute 483.3 grams of powder cocaine. [Docs. 14, 16.] In the sentencing portion of the plea agreement, the parties agreed that U.S.S.G. §

-1-

Case No. 4:04-CR-00011
Gwin, J.

2D1.1(c) "establishes a base offense level of 24." [Doc. 16.] Consistent with the plea agreement, the United States requested a three level reduction for the Defendant's acceptance of responsibility under § 3E1.1(b). *Id.*; *see also* [Doc. 17.]. The Defendant agreed not to seek a downward departure from the sentencing guidelines. [Doc. 16.] Finally, the parties agreed that the Court would determine the Defendant's criminal history category. *Id.*

After reviewing the parties' sentencing memoranda, conducting a sentencing hearing, and applying the then-mandatory sentencing guidelines, on May 21, 2004, the Court sentenced the Defendant as a career offender to 151 months of imprisonment. [Docs. 27, 28.]

Defendant Vigorito subsequently appealed the judgment and sentence to the Sixth Circuit Court of Appeals. [Doc.29.] Apparently unaware of the effect of the recently issued opinion in *United States v. Booker*, 543 U.S. 220 (2005), the Court of Appeals found that this Court "properly sentenced Vigorito as a career offender" and affirmed the Court's judgment of conviction and sentence. [Docs. 37, 38.] The United States Supreme Court denied Defendant Vigorito's writ seeking certiorari. [Doc. 43.]

On January 19, 2007, the Defendant filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. [Doc. 39.] This Court referred the Defendant's motion to Magistrate Judge Limbert for a report and recommendation. [Doc. 40.] Magistrate Judge Limbert filed his report and recommendation on September 10, 2007. [Doc. 43.] That report recommended this Court grant the writ. Neither party objected. On October 1, 2007, this Court reviewed and then adopted the Magistrate Judge's report and recommendation:

> The Magistrate Judge recommended that the Court find that "Petitioner's appellate counsel was not ineffective in failing to raise *Booker*/*Barnett* issues because he did eventually raise them in the Sixth Circuit pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure before Petitioner's appeal was denied." *Id*. However, the

Case No. 4:04-CR-00011
Gwin, J.

> Magistrate Judge nevertheless recommended that the Court remand Vigorito's case for resentencing because "Petitioner's sentence was pending on direct appeal when *Booker* and *Barnett*, cases finding that the Sentencing Guidelines are advisory, were decided." *Id*. Thus, the Magistrate Judge recommends finding plain error with regard to Vigorito's sentence.

[Doc. 44.]  Accordingly, this Court remanded the case for resentencing. *Id.*

On November 6, 2007, upon remand, the Court held another sentencing hearing and resentenced Defendant Vigorito to 65 months of imprisonment. [Doc. 46.]

## II.  Sentencing Standard

Following *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are now advisory.  Upon appellate review, while sentences that adhere to the guidelines range are presumptively reasonable, sentences that deviate from the advisory guidelines are "neither presumptively reasonable nor presumptively unreasonable." *United States v. Ferguson*, 456 F.3d 660, 664-65 (6th Cir. 2006) (citations omitted).

In the aftermath of *Booker*, district courts within the Sixth Circuit must consider the parties' arguments, the advisory guidelines range, and the other relevant 18 U.S.C. § 3553(a) factors when arriving at a sentencing decision. *E.g.*, *United States v. Jones*, 489 F.3d 243, 250-51 (6th Cir. 2007) (quoting *Ferguson*, 456 F.3d at 664.); *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006). The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed–
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;

-3-

Case No. 4:04-CR-00011
Gwin, J.

> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) . . . the [guidelines] sentencing range . . . ;
>
> (5) any pertinent policy statement issued by the Sentencing Commission . . . ;
>
> (6) the need to avoid unwarranted sentence disparities . . . ; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  Though district courts must consider the factors listed above, they need not explicitly analyze each of the factors in their sentencing determination.  *E.g.*, *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006); *United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005).

After reviewing the § 3553(a) factors, under the "parsimony provision," district courts must ultimately "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).  18 U.S.C. § 3553(a); *see also United States v. Foreman*, 436 F.3d 638, 644, n. 1 (6th Cir. 2006).

Another district court in the Northern District of Ohio recently summarized district courts' responsibility in determining sentences:

> Therefore, when one considers the Sixth Circuit's post-*Rita* line of decisions, along with the *Rita* opinion itself, it is clear that the district courts have tremendous sentencing discretion in the final determination of the sentence imposed.  The sentencing courts are to consider the relevant § 3553(a) factors, the advisory Guideline range, and any other nonfrivolous arguments that each side may make, and indeed, may use the Guidelines as an advisory resource.  Ultimately, however, the courts must impose a sentence in accord with § 3553(a)'s parsimony provision, and provide a reasoned explanation of the basis for the sentence.

*United States v. Ortiz*, 502 F.Supp.2d 712, 715-16 (N.D. Ohio 2007).

Case No. 4:04-CR-00011
Gwin, J.

This Court will first determine the advisory guidelines range and then consider the relevant § 3553(a) factors. The Court will address the parties' arguments throughout its discussion. Guided by the "parsimony provision," the Court will ultimately conclude that the Defendant should receive a sentence of 65 months, a sentence that is "sufficient, but not greater than necessary" to fulfill the purposes of the statute.

### III.  Calculation Under the Advisory Guidelines

The Court begins by calculating Defendant Vigorito's sentence under the advisory sentencing guidelines. The Court applies the same November 2003 edition of the Federal Sentencing Guidelines Manual and Appendices that it applied when the Defendant was previously sentenced in May 2004.

Pursuant to U.S.S.G. § 2D1.1(c), the Defendant's base offense level for possessing with the intent to distribute 483.3 grams of powder cocaine is 24. *See* U.S.S.G. 2D1.1(c)(8). Under U.S.S.G. § 3E1.1(a) and U.S.S.G. § 3E1.1(b), the Court then reduces the offense level by three for Defendant Vigorito's acceptance of responsibility. *See* Presentence Investigation Report (April 27, 2004) ("PSR"), at ¶¶ 11-14.[1] Defendant Vigorito made the following handwritten statement on March 11, 2004:

> In December of 2003, I had cocaine sent via Federal Express to a girls house. The cocaine was sent from Texas. I picked up the cocaine from her car, which was

---

[1] The Defendant's counsel and the Defendant indicated to the Court that they found no mistakes in the Pretrial Investigation Report. *See* Transcript of Sentencing Hearing at 1-2. While the transcript indicates that the Defendant's counsel had requested "to be heard on one issue" in this line of questioning and the Court did not hear such a request, the Court provided additional opportunities throughout the hearing for the Defendant's counsel to be heard. Later in the hearing, the Court asked the Defendant's counsel, "Is there anything else you want to say, Mr. Whitney?" The Defendant's counsel responded, "No, nothing more from me." *See* Transcript of Sentencing Hearing at 8. Thus, the Court assumes that the Defendant's counsel made all his desired arguments.

Case No. 4:04-CR-00011
Gwin, J.

> parked in a supermarket parking lot. I was arrested and detained.
>
> I take full responsibility for my actions. I apologized to everyone involved.
>
> I was under a lot of pressure financially. I had joint custody of my son & just recently was granted temp. full custody and the pressure mounted. I was also doing drugs to cope with everything, which further complicated & strained my financial and mental situations. I'm truly sorry for what I've done. [sic]

*Id*. Pursuant to U.S.S.G. § 3E1.1(b), the United States moved to give the Defendant a third point for acceptance of responsibility on February 25, 2004. [Doc. 17.] The Court agrees. Accordingly, the Defendant's adjusted offense level becomes 21.

However, the Court finds that the Defendant is technically a "career offender" under U.S.S.G. § 4B1.1(a). The Defendant was over eighteen years old when he committed the instant crime. PSR, at ¶ 25. The Defendant's instant offense is possession with the intent to distribute 483.3 grams of powder cocaine, a felony that is a controlled substance offense. *Id.* Finally, the Defendant has been convicted of two controlled substance felonies before this conviction: trafficking in marijuana in Trumbull County case 95CR737 and trafficking in cocaine in Trumbull County case 99CR681. *Id.* Therefore, the Defendant is a career offender under U.S.S.G. § 4B1.1(a), and his base offense level is 32 under U.S.S.G. § 4B1.1(b). With the three point reduction for acceptance of responsibility, the adjusted offense level becomes 29.

The Court next reviews the Defendant's criminal history. *See* PSR, at ¶¶ 32-37. Because the Defendant is technically a career offender under U.S.S.G. § 4B1.1(a), his criminal history "shall be Category VI" pursuant to U.S.S.G. § 4B1.1(b). Absent the career offender status, the Defendant would have 4 criminal history points and a Criminal History Category III. PSR, at ¶ 38.

Thus, the advisory guidelines range for the Defendant, technically a career offender, with a total offense level of 29 and a criminal history category of VI, is 151 to 188 months. *See* U.S.S.G.

Case No. 4:04-CR-00011
Gwin, J.

Chapter 5, Part A.

### IV. Section 3553(a) Factors

The Court next considers the Section 3553(a) factors that relate to the Defendant's case: the nature and circumstances of the offense; the Defendant's history and character; the purposes of sentencing; the kinds of sentences available; the Sentencing Commission's advisory guidelines; and the need to avoid unwarranted sentencing disparities.[2/]

**1. The Nature and Circumstances of the Offense**

The Defendant possessed with the intent to distribute 483.3 grams of powder cocaine. PSR, at 1. The Defendant agreed to the summary of the offense found in his plea agreement. *See* [Doc. 17.]. On or about December 3, 2003, the Defendant accepted a Federal Express package that contained 483.3 grams of powder cocaine. *Id.* Drug Enforcement Agency ("DEA") agents arrested him after he took possession of the package. *Id.* The Defendant provided a written statement to DEA agents admitting ownership of the cocaine. *Id.* He explained that he had sent money to the cocaine source and then awaited the instant package that he had instructed the source to send to him through another individual. *Id.*

The Court finds the nature and circumstances of the offense to be typical to offenders in the half-kilogram range. Nothing in the nature of this offense differs significantly from typical other cases involving middle-level cocaine dealers.

---

[2/] The Court does not consider the restitution factor because restitution is not involved in this case.

Case No. 4:04-CR-00011
Gwin, J.

### 2. The Defendant's History and Character

The Defendant has a criminal history. In 1995, following the Defendant's guilty plea, the Trumbull County Common Pleas Court found Defendant Vigorito guilty of "Trafficking in Marijuana," "Unlawful Possession of a Dangerous Ordnance," and "Receiving Stolen Property" in 95CR737. *Id.* The Court sentenced the Defendant to a one year suspended sentence and five years of probation. *Id.* In the sentencing hearing, the Government drew attention to the involvement of a weapon in this felony conviction. *See* Transcript of Sentencing Hearing at 5.

In 1999, following the Defendant's guilty plea, the Trumbull County Common Pleas Court found the Defendant guilty of trafficking in cocaine and sentenced him to two years incarceration. PSR, at ¶ 36. For the first time, the Defendant went to prison. *Id.*

Taken as a whole, the Court finds that this criminal history is relatively limited, especially when compared to other offenders with a Category VI classification.

The Court specially examines the Defendant's previous drug-related offenses. The Court finds that the trafficking in marijuana conviction is relatively minor. The Defendant was trafficking less than the bulk amount. *See* PSR, at ¶¶ 32-33. At the time of this offense, November 9, 1995, Ohio punished this level of marijuana trafficking as a fourth-degree felony with definite sentences of ½, 1 or 1 ½ years. Today, Ohio punishes this crime as a fifth-degree felony, not a felony under federal substance abuse laws. The crime constitutes a predicate offense for the purposes of the career offender designation because of its status as a fourth degree felony at the time of the offense;[3]

---

[3] The Sixth Circuit Court of Appeals affirmed this Court's prior designation of the Defendant as a career offender. *See* [Doc. 37: *United States v. Vigorito*, No. 04-3703 (6th Cir. Nov. 7, 2005).]. The Sixth Circuit found that this Court "properly considered Vigorito's 1995 marijuana trafficking conviction as a predicate offense, because it was punishable by a term of imprisonment exceeding one year at the time he committed the offense. Although it is true that Senate Bill 2 reduced the terms of imprisonment for offenses similar to Vigorito's 1995 offense, the Supreme Court of
(continued...)

Case No. 4:04-CR-00011
Gwin, J.

however, the crime no longer qualifies as a predicate offense under Ohio law. *See* PSR, at 14. Finally, the Court notes that the Defendant received a suspended sentence. *See* PSR, at ¶ 32.

While the Defendant's 1999 trafficking in cocaine conviction is more serious than his previous conviction, the Court finds that this conviction involved a relatively small amount of cocaine between 10 and 100 grams. *See* PSR, at ¶ 37. The Court also takes into account that this was the Defendant's first time being incarcerated. *Id.*

Theses two prior felonies form the predicates for designating the Defendant a career offender. The Government emphasizes that Defendant Vigorito had "fair warning" in this case after these two earlier offenses. *See* Transcript of Sentencing Hearing at 6. However, as another district court in the Northern District of Ohio recently said, this Court does "not believe that the designation [is] fully warranted. [This court has] seen many people with very lengthy prior criminal records who clearly warrant the designation of career offender (and the full consequences of that designation) in the full degree. [This Defendant] does not." *See United States v. Ortiz*, 502 F.Supp.2d 712, 717 (N.D. Ohio 2007) (citing *United States v. Ennis*, 468 F.Supp.2d 228, 235 (D. Mass. 2006) ("There are, in short, career offenders and *career offenders*.")).

The Defendant does though, as he has admitted, have a substance abuse problem. PSR, at ¶ 48. The Defendant tried marijuana at age 16 and powder cocaine at age 18. *Id.* He continued use of both drugs socially until 1999. *Id.* After his release from prison in 2001, the Defendant began to use cocaine again in 2002. *Id.* He says that he used powder cocaine 3-4 times per week, using 1-2 grams each time. *Id.* The Defendant reports that he has not used marijuana since 1999. *Id.*

---

[3]/(...continued)
Ohio has held that defendants who committed their crimes before July 1, 2006, are bound by the sentencing provisions in effect prior to that date." *Id.*

-9-

Case No. 4:04-CR-00011
Gwin, J.

Defendant Vigorito further states that beginning in 2002, he used Oxycontin on a daily basis. *Id.* Finally, the Defendant admits experimenting with heroin.

In the current case, Defendant Vigorito has been incarcerated near three years. Before that incarceration, the Defendant had participated in various treatment programs, including treatment at 2 North Park in 1995 and attendance at twelve step meetings. PSR, at ¶ 49. While incarcerated for the instant offense, the Defendant has participated in a forty-hour substance abuse program available at his prison. *See* Transcript of Sentencing Hearing at 8.

The Court finds that the Defendant has demonstrated an effort to improve himself while at prison in other ways as well. The Defendant's counsel listed the various programs that the Defendant has participated in while at prison, including a parenting class and a business class. *See* Transcript of Sentencing Hearing at 7-8. Defendant Vigorito further demonstrates his improved work ethic by his work in the barber shop at the prison. *Id.* Counsel also reported that the Defendant has received no tickets or complaints in prison thus far. *Id.* The Defendant's own brief statement further supports a finding that the Defendant regrets his actions more with each day and continues to genuinely and proactively improve himself to prepare for his release. *Id.*

Thus, while the Defendant has a history involving crime and drug abuse, the Court finds that the Defendant's relatively minor criminal history (in comparison to other career offenders) and efforts to improve himself while at prison suggest that he is likely to be ready to leave prison earlier than others designated as career offenders.

### 3. The Purposes of Sentencing

The Court must choose a sentence that reflects the seriousness of the offense, promotes

Case No. 4:04-CR-00011
Gwin, J.

respect for the law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, protects the public from further crimes of the Defendant, and provides the Defendant with needed training, care and treatment.  18 U.S.C. § 3553(a)(2).  The Court finds that a 65 month sentence accomplishes these objectives by providing a significant prison term proportionate to the seriousness of the offense and adequate to deter others from committing similar crimes.

With regard to the Court's responsibility to protect the public from future crimes of the Defendant, the Court finds that the Defendant's history and character provide reason to believe that the Defendant will pose less danger to the public after serving 65 months.  However, the Court is aware of the risk of recidivism in this case given the Defendant's past drug use and criminal record. Accordingly, the Court orders the Defendant to participate in whatever substance abuse treatment programs his probation officer recommends and to regularly work during his term of supervised release following incarceration.  The Court hopes that the recommended substance abuse treatment and regular employment will prevent further drug use and encourage productive contribution to the community.

**4. The Kinds of Sentences Available**

The Court cannot sentence Defendant Vigorito to a term of imprisonment greater than twenty years.  21 U.S.C. §§ 841(a)(1), (b)(1)(C); PSR, at ¶ 58. There is no mandatory minimum sentence involved in this case.  *Id.*

**5. The Sentencing Commission's Advisory Guidelines Range**

Case No. 4:04-CR-00011
Gwin, J.

Defendant Vigorito is technically a career offender under U.S.S.G. § 4B1.1(a).  As described above, the advisory guidelines range for the Defendant as a career offender is 151 to 188 months. *See* U.S.S.G. Chapter 5, Part A.

Neither party argues for a departure based on the guidelines or the Sentencing Commission's policy statements.

This range is significantly higher than that which the Defendant would face without the career offender status.  Without this designation, the Defendant faces a base offense level of 24.  *See* U.S.S.G. § 2D1.1(c)(8).  With a three level reduction for acceptance of responsibility, his base offense level becomes 21.  *See* U.S.S.G. § 3E1.1(a); U.S.S.G. § 3E1.1(b).  If the Defendant were not considered a career offender, his four criminal history points would barely result in a criminal history category of III.  *See* U.S.S.G. Chapter 5, Part A.  Thus, without the career offender status, the Defendant faces an advisory guidelines range of 46-57 months based on an offense level of 21 and a criminal history category of III.  *See id.*

The career offender range is approximately three times the term involved in the non-career offender range.  The Court finds this tripling effect contrary to the purposes of § 3553(a)(2) in this case based on its analysis of the other § 3553(a) factors.

**6. The Need to Avoid Unwarranted Sentencing Disparities**

As described above, the Court finds that the Defendant's predicate offenses are minor relative to those committed by other career offenders.  The Court must avoid disproportionate sentencing by sentencing the Defendant below the guidelines range for a career offender.

-12-

Case No. 4:04-CR-00011
Gwin, J.

## V. Sentencing Decision Under Parsimony Provision

The Court chooses not to follow the advisory guidelines in this case because it concludes that a sentence within the guidelines range is "greater than necessary" to fulfill the purposes of the sentencing regime outlined in Section 3553(a)(2).  The Court finds the range inappropriately high in this case because of the tripling effect caused by the Defendant's career offender status.

This Court agrees with those courts that have "recognized that the career offender guideline can produce a penalty greater than necessary to satisfy the purposes of sentencing." *See e.g.*, *United States v. Fernandez*, 04-CR-254, 9-13 (E.D. Wis. June 28, 2006) (citing cases) (quoting the U.S. Sentencing Commission regarding problems associated with the career offender guidelines in the context of drug trafficking offenses); *see also United States v. Phelps*, 366 F.Supp.2d 580, 590 (E.D. Tenn. 2005) (noting that "a non-Guideline sentence may be sufficient . . . in cases where the defendant barely qualifies as a career offender.").

While the Court acknowledges the significance of the Defendant's pattern of drug activity, the Court also finds that his predicate offenses are relatively minor when compared to other typical career offenders as described above.  To avoid unwarranted sentencing disparities, the Court must sentence the Defendant to a lower sentence than those career offenders with more significant predicate offenses.  *See Ortiz*, 502 F.Supp.2d at 719 (indicating concern that "the 'career offender' designation makes no differentiation between those with extensive criminal records (or those who are moving massive quantities of drugs) and a $20 drug transaction, yet the difference in reality is obvious").

Further, as described above, the Court finds that the Defendant's character and history support a sentence below the guidelines range.   The Defendant's genuine efforts to improve himself

-13-

Case No. 4:04-CR-00011
Gwin, J.

indicate that he is ready to leave prison sooner than the guidelines range would suggest.  Defendant Vigorito is a strong candidate for reform.  *See United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006) (affirming the district court's downward variance based in part on the Defendant's relatively insubstantial previous criminal history and its belief that the defendant "was an ideal candidate for reform").

The Court finds that a sentence of 65 months reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public from further crimes of the Defendant.  *See* 18 U.S.C. § 3553(a)(2).  While the sentence is below the career offender guidelines range, the sentence is above the non-career offender range of 46-57 months.  The Court imposes a sentence lower than the career offender range for the reasons described in the Court's analysis of the § 3553(a) factors.  The Court imposes a sentence higher than the non-career offender range because it acknowledges that the Defendant was technically a career offender, albeit for one relatively minor offense.  The Defendant should face a penalty for his multiple drug offenses.

Given the Defendant's risk of recidivism, the Court orders the Defendant to participate in whatever substance abuse treatment program the Defendant's probation officer recommends and to be gainfully employed while on supervised release.  The Court hopes that these special conditions will provide effective "correctional treatment."  *See* 18 U.S.C. § 3553(a)(2)(D).

Finally, the Court follows the other recommendations of the PSR and the guidelines regarding the terms and conditions of the Defendant's supervised release.  These terms are set forth in the Judgment.

Case No. 4:04-CR-00011
Gwin, J.

## V. Conclusion

For the reasons stated above, the Court sentences the Defendant to a prison term of 65 months with credit for time already served. The Court further orders the Defendant to participate in any substance abuse programs that his probation officer recommends and to maintain regular employment while on supervised release.

IT IS SO ORDERED.


Dated: November 20, 2007                         s/          *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE